**F I L E D**

**PUBLISH**

**August 21, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 06-4042

TRAVIS L. WILKEN,

Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:04-CR-695-DB)**

---

Submitted on the briefs:[*]

Sharon Preston, Salt Lake City, Utah, for Defendant-Appellant.

Brett L. Tolman, United States Attorney, and Diana Hagan, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **BRISCOE**, **EBEL,** and **McCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant-Appellant Travis L. Wilken pled guilty to the crime of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Wilken now appeals his sentence of 235 months' imprisonment on grounds that the district court incorrectly calculated the United States Sentencing Guidelines range (the "Guidelines range") for his offense and that the length of the sentence imposed was unreasonable.

We first hold that Mr. Wilken did not waive his right to appeal his sentence, despite language to the contrary in his plea agreement, because statements made by the district court during his plea colloquy created ambiguity as to whether his waiver was knowing and voluntary. However, upon considering the merits of Mr. Wilken's appeal, we conclude that he has failed to demonstrate that his sentence was unreasonable and that any error in calculating the Guidelines range for his offense was harmless. We therefore AFFIRM Mr. Wilken's sentence.

I. **BACKGROUND**

A. **Facts**

According to uncontested facts from the presentence report ("PSR") prepared by the United States Probation Office in this case, a confidential informant ("CI") working for the Drug Enforcement Administration ("DEA")

arranged to sell a pound of methamphetamine to Mr. Wilken on the evening of September 27, 2004. Utah Highway Patrol ("UHP") troopers stopped Mr. Wilken's pickup truck en route to the CI's residence to consummate the sale. Mr. Wilken admits that, during this stop, he drove away from the troopers as they were asking for his identification; however, he disputes the government's allegation that this flight occurred "at a high rate of speed with one of the troopers still halfway in the driver's door." Later that evening, UHP troopers located Mr. Wilken walking down Main Street in Woods Cross, Utah, and placed him under arrest. The troopers found $11,200 in currency, a digital scale, and 15.9 grams of methamphetamine in his possession, and Mr. Wilken subsequently admitted that "at least some of that drug would have been distributed, sold, or shared with friends and/or associates had it not been seized."

**B.     The Plea Agreement and Waiver of Appeal**

Mr. Wilken was charged with one count of possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and one count of possessing with intent to distribute 5 grams or more of actual methamphetamine, both in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to a plea agreement reached with the government, Mr. Wilken pled guilty only to the latter count, and the government moved to dismiss the former count at sentencing. The plea agreement also contained a

statement of Mr. Wilken's right to appeal his sentence and a purported waiver of that right:

> 8. I know there is no appellate review of any lawful sentence imposed under a plea of guilty. I also know I may appeal the sentence imposed upon me in this case only if the sentence is imposed in violation of law or, in light of the factors listed in 18 U.S.C. § 3553(a), the sentence is unreasonable. . . .
>
> 10. Fully understanding my limited right to appeal my sentence, as explained above, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily and expressly waive my right to appeal any sentence imposed upon me, and the manner in which the sentence is determined, on any of the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, except I do not waive my right to appeal (1) a sentence above the maximum penalty provided in the statute of conviction as set forth in paragraph 2 above.

At a change of plea hearing, the court ascertained that Mr. Wilken had reviewed the written plea agreement. However, in asking Mr. Wilken whether he understood the waiver of appeal contained in that agreement, the court described the waiver in significantly different terms than appeared in the written agreement:

> THE COURT: When you plead guilty you waive the right to appeal any lawful sentence. So unless a sentence is imposed above the statutory maximum, which in this case is life, <u>or if it's in violation of the factors listed in the statute</u>, you won't have a right of appeal. Do you understand that?
> THE WITNESS [Mr. Wilken]: I do.
> THE COURT: Unless it falls into <u>those other categories</u>, you won't be able to appeal the sentence . . . .

(Emphasis added). Later during the same hearing, the court reiterated the same point in more general terms:

THE COURT: Also you're agreeing to waive any appeal or collateral attacks <u>as we discussed earlier</u> and as outlined in this agreement; is that true?
THE WITNESS: Yes.

(Emphasis added). The court then confirmed that Mr. Wilken voluntarily agreed to plead guilty and had been "able to consult with [his] attorney about the decision to plead guilty and about this agreement," accepted Mr. Wilken's guilty plea, and directed him to sign the agreement.

**C.     The PSR**

Mr. Wilken's PSR assigned him a base offense level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4), based on the quantity of methamphetamine and cash in his possession at the time of his arrest. The PSR adjusted this upwards by 2 levels under U.S.S.G. § 3C1.2 for obstruction of justice, citing the government's allegation that, during the traffic stop prior to his arrest, Mr. Wilken "sped off in his vehicle with the UHP trooper standing half-way in the driver's door" and subsequently "engaged in a high speed pursuit with police." The offense level was further increased under the "career offender" provision at U.S.S.G. § 4B1.1, which prescribes an offense level of 37 where the statutory maximum sentence for the offense at issue is life imprisonment.[1] Finally, the PSR reduced the offense

---

[1] Enhancement under the career offender provision of the Guidelines requires, inter alia, that "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Though it listed Mr. Wilken's prior convictions, including at least two

(continued...)

level by 3 levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, producing a total offense level of 34. The PSR also noted that Mr. Wilken's criminal history would normally be in category V based on his prior convictions; however, because he met the criteria for a career offender, U.S.S.G. § 4B1.1(b) categorically prescribed a criminal history category of VI.

Thus, based on a total offense level of 34 and a criminal history category of VI, the Guideline range for Mr. Wilken's sentence as calculated in the PSR was 262 to 327 months. The PSR also listed the statutory limitations on his sentence, which provide for a mandatory minimum sentence of 10 years and a maximum of life imprisonment.[2]

Prior to sentencing, Mr. Wilken filed several written objections to the PSR and requested a sentence below its calculated Guideline range. He first argued that the PSR erred by counting two of his prior convictions, described in paragraphs 38 and 39 of the PSR, separately for purposes of calculating his

---

[1](...continued)
felony convictions for controlled substance offenses, the PSR did not specify upon which of these his career offender status was predicated.

[2] Typically, a conviction under 21 U.S.C. § 841(a)(1) for possession with intent to distribute 5 grams or more of methamphetamine carries a statutory mandatory minimum sentence of five years and a maximum term of 40 years' imprisonment. 21 U.S.C. § 841(b)(1)(B)(viii). However, the government here filed an information pursuant to 21 U.S.C. § 851(a)(1), demonstrating that Mr. Wilken had previously been convicted for a felony drug offense, thus increasing the statutory mandatory minimum to 10 years and the maximum term to life imprisonment under § 841(b)(1)(B)(viii).

criminal history score; according to Mr. Wilken, these convictions resulted from "related" cases (as defined in U.S.S.G. § 4A1.2), and therefore should have counted as only one point on his criminal history score. Mr. Wilken conceded, however, that even so construed, his criminal history still qualified him for career offender status under U.S.S.G. § 4B1.1.

Second, Mr. Wilken argued that the PSR erred in applying the two-level enhancement for reckless endangerment pursuant to U.S.S.G. § 3C1.2 because there was insufficient proof of the government's allegation that he drove away from the traffic stop at high speed with an officer halfway inside the doorway of his vehicle. While Mr. Wilken admitted that he drove away in an attempt to evade the police, he denied that he did so at high speed or that he endangered officers or anyone else, conduct which he argued fails to warrant enhancement under § 3C1.2. Mr. Wilken claimed that he sought as evidence videotapes of the traffic stop from the Highway Patrol vehicles involved, but that the government informed him that the tapes had been lost.

Mr. Wilken also argued that one of his prior convictions, a misdemeanor conviction for possession of marijuana and drug paraphernalia, should not have been counted in his criminal history score because he was not represented by counsel during court proceedings and pled guilty "just to get the case behind him." Thus, he contended, a criminal history score which included two points for

this conviction would "substantially over-represent[] the seriousness of [his] criminal history."

Finally, Mr. Wilken argued that the PSR's application of U.S.S.G. § 4B1.1's career offender provision was inappropriate in his case because his prior controlled substance offenses were relatively minor and mostly confined to a one-year period of time. He also noted more generally that the United States Sentencing Commission has itself been critical of the career offender provision's efficacy when applied to non-violent drug offenders. Thus, he requested that the sentencing court decline to apply career offender status and instead impose a sentence of ten years, the mandatory minimum statutory sentence available for his present offense.

### D.    Sentencing

At sentencing, Mr. Wilken verbally reasserted his argument for a below-Guidelines sentence of ten years, and the court acknowledged his written objections to the PSR. The court accepted Mr. Wilken's argument that his criminal history score overstated his actual criminal history slightly and accordingly decreased his criminal history score by one category, but declined to depart or vary from the remainder of the Guidelines calculations in the PSR:

> I find that the obstruction of justice points are appropriately calculated and considered when looking at what the guidelines suggest the sentence should be considered to be, and I find that the presentence report in all other respects is appropriately calculated. I do find that the

career offender calculations are appropriate in this case. I will recognize that the criminal history overstates the defendant's criminal history slightly and I am going to ignore the guidelines requirement to move the defendant to a category six. I will keep him in a category five. That has the consequence only of moving him . . . to a criminal history category of five rather than six, yielding a sentencing guideline range of 235 to 293 months, which I find appropriate in this case.

The sentence will be at the low end of that range, 235 months in custody of the Federal Bureau of Prisons . . . .

The court also agreed to recommend placement in an intensive drug rehabilitation program, noting Mr. Wilken's claim that "methamphetamine is the root of all of [his] problems." Finally, the court reiterated its belief that the Guidelines' career offender provision was appropriately applied to Mr. Wilken. "Under these circumstances I find that you qualify as a career offender, not to mention you have endangered the lives of your children for years now. I don't see anything yet that has given you enough incentive to stop a very, very dangerous practice."

Judgment was entered on Mr. Wilken's sentence on February 6, 2006. Mr. Wilken filed a timely notice of appeal the following day.

## II. DISCUSSION

### A. Validity of Mr. Wilken's waiver of appeal

We have jurisdiction pursuant to 28 U.S.C. § 1291. See United States v. Hahn, 359 F.3d 1315, 1322 (10th Cir. 2004) (en banc) ("[W]e have statutory subject matter jurisdiction under § 1291 over sentencing appeals even when the defendant has waived his right to appeal in an enforceable plea agreement."). We

begin by addressing the predicate issue of whether Mr. Wilken waived his right to appeal; if so, we must dismiss his appeal without reaching its merits, see id. at 1328.

Our review of an appellate waiver is governed by the three-part inquiry we articulated in Hahn: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . ." Id. at 1325.

Mr. Wilken's primary argument against enforcement of his waiver implicates both the first and second prongs of the Hahn analysis: he argues that, although the language of his plea agreement contained a clear waiver of his right to appeal, the scope of that waiver became ambiguous after the sentencing court's statements and therefore, at the time he pled guilty and signed the plea agreement, any waiver of his right to appeal an unreasonable sentence was not knowing or voluntary. We agree that the sentencing court's explanation of the waiver differed substantially from that in the written plea agreement: while the written waiver left Mr. Wilken with the right to appeal only "a sentence above the maximum penalty provided in the statute of conviction," the court explained to Mr. Wilken that he also had the right to appeal a sentence imposed "in violation of the factors listed in the statute," thus significantly narrowing the scope of the

waiver.[3]  The question here is whether that statement, made during the plea colloquy just prior to Mr. Wilken's signing the plea agreement and entering a plea of guilty, introduced ambiguity so as to preclude our finding that the waiver of his right to appeal an unreasonable sentence was knowing and voluntary.

We have previously held that a sentencing court's "statements made *after* the entry of the appeal waiver and the district court's acceptance of the guilty plea cannot overcome the plain language of the appeal waiver" to create ambiguity where none exists in the written plea agreement.  United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004) (emphasis added) (quoting Hahn, 359 F.3d at 1328 n.14); see also United States v. Fisher, 232 F.3d 301, 304 (2d Cir. 2000) ("Most of the circuits that have considered whether a district judge's post-sentence advice as to appellate rights renders ineffective an otherwise enforceable waiver of such rights have ruled that the waiver remains valid.").  Mr. Wilken's argument, however, presents us with a different question, one we have

---

[3]It is unclear precisely which statute the court intended to reference.  Mr. Wilken asserts that the court's statement "can only be construed to mean 18 U.S.C. § 3742," which allows for appeal of all "unreasonable sentences, whether they fall within or outside the advisory Guidelines range."  United States v. Sanchez-Juarez, 446 F.3d 1109, 1114 (10th Cir. 2006).  A colorable argument could also be made, however, that the court meant to refer to the sentencing factors enumerated at 18 U.S.C. § 3553(a).  We need not concern ourselves with this distinction, since Mr. Wilken's arguments on appeal concern the calculation and reasonableness of his sentence and are therefore cognizable under either interpretation.

never squarely faced: whether the sentencing court's mischaracterization of an appellate waiver during a plea colloquy, *prior* to signing of the plea agreement or entry of a guilty plea, can create a material ambiguity as to an otherwise unambiguous waiver in the plea agreement. See United States v. Salazar, 188 Fed. Appx. 787, 790 n.3 (10th Cir. 2006) (unpublished) (noting that the instant issue "appears to be an unsettled question"), cert. denied, 127 S. Ct. 1017 (2007).

Our precedent, though not addressing this question directly, provides guidance by directing this court to look "primarily to two factors" in determining whether an appellate waiver was made knowingly and voluntarily: (1) the language of the plea agreement, and (2) the plea colloquy required by Federal Rule of Criminal Procedure 11.[4] United States v. Sandoval, 477 F.3d 1204, 1207 (10th Cir. 2007); Hahn, 359 F.3d at 1325. We have thus clearly contemplated an explanatory role for the plea colloquy, although our prior opinions have addressed this role in the context of clarifying the particulars of a defendant's appellate waiver, rather than obfuscating them. See United States v. Chavez-Salais, 337 F.3d 1170, 1173 (10th Cir. 2003) (holding that the plea colloquy is a "way in

---

[4]The relevant portion of Rule 11 requires that the sentencing court, prior to acceptance of a guilty plea, address the defendant personally to "inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). In addition, the court must also "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

- 12 -

which the content of a defendant's waiver of appeal rights can be made known to him").

Nevertheless, logic indicates that if we may rely on the sentencing court's statements to eliminate ambiguity prior to accepting a waiver of appellate rights, we must also be prepared to recognize the power of such statements to achieve the opposite effect. If it is reasonable to rely upon the court's words for clarification, then we cannot expect a defendant to distinguish and disregard those statements of the court that deviate from the language of a particular provision in a lengthy plea agreement — especially where, as here, neither the government nor defense counsel apparently noticed the error at the time. Assuming that Mr. Wilken understood the court's statements as broadening his right of appeal under the waiver — an understanding the court's language clearly supports — he certainly could not be faulted for relying upon the court's explanation, rather than his own understanding, as the definitive construction of the agreement he would almost immediately sign.

This immediacy, without objection or time to consult with counsel, is a further factor supporting our conclusion that the sentencing court's statements created ambiguity in Mr. Wilken's waiver. Had either party's counsel objected to the court's statement or sought clarification, then the court could have amended its statement and resolved any ambiguity. Alternatively, if an adequate interval

had occurred after the court's statements but prior to the entry of a guilty plea or signing of the agreement during which Mr. Wilken could have consulted with counsel regarding any confusion over the scope of the appellate waiver, then arguably counsel would have cleared up any ambiguity. But here, neither clarification nor an opportunity therefor was offered between the court's erroneous statements and Mr. Wilken's signing of the plea agreement.[5]

We are thus left with ambiguity existing at the time Mr. Wilken signed his plea agreement and pled guilty: the written agreement enumerates a broad waiver of his appellate rights, but the court's statements during the plea colloquy describe a much narrower waiver. Under such uncertain circumstances, we must construe the waiver narrowly, "according to . . . what the defendant reasonably understood when he entered his plea." Chavez-Salais, 337 F3d at 1172; see id. at 1173 ("Like most waivers, a defendant's waiver of his right to appeal . . . is to be construed narrowly."); Hahn, 359 F.3d at 1325 ("In determining a waiver's scope, we will strictly construe appeal waivers and any ambiguities in these agreements

---

[5]The sentencing court did inquire, prior to Mr. Wilken's signing of the plea agreement and his guilty plea, whether he had "been able to consult with [his] attorney about the decision to plead guilty and about this [plea] agreement," to which Mr. Wilken responded "Yes, I have." This exchange failed to cure the ambiguity, however, because it indicates only that Mr. Wilken was able to consult his attorney *prior* to the court's erroneous description of the appellate waiver; it does not ascertain that Mr. Wilken had the opportunity to receive any advice *after* the ambiguity arose, or that he understood that he would be bound by the written agreement rather than the court's verbal interpretation of it.

will be read against the Government and in favor of a defendant's appellate rights."). As a result, we cannot conclude that Mr. Wilken's waiver of his right to appeal an allegedly unreasonable sentence was knowing and voluntary, and we therefore hold that Mr. Wilken did not waive his right to bring the instant appeal.[6] See Chavez-Salais, 337 F.3d at 1174. We therefore proceed to consider the merits of his appeal.

## B. Merits

### 1. Calculation of the Guidelines range including the reckless endangerment provision at U.S.S.G. § 3C1.2[7]

In determining whether the district court correctly calculated the applicable Guidelines range, "we review factual findings for clear error and legal determinations de novo." United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). Even where we find an error in calculating the Guidelines

---

[6]Because we cannot conclude that Mr. Wilken knowingly and voluntarily waived his right to bring this appeal and thus we decline to enforce the waiver on this ground, we need not address his alternative argument that enforcement of the waiver would result in a miscarriage of justice.

[7]The PSR referred to the adjustment under § 3C1.2 as an "Adjustment for Obstruction of Justice," and both Mr. Wilken and the court adopted this nomenclature when referring to this adjustment. Section 3C1.2, however, is entitled "Reckless Endangerment During Flight"; it is the preceding provision, § 3C1.1, which is entitled "Obstructing or Impeding the Administration of Justice." We therefore diverge from the district court and refer to the § 3C1.2 adjustment as alleging reckless endangerment, rather than obstruction of justice.

range, however, we need not vacate and remand the sentence if the error was harmless.  See United States v. Graham, 466 F.3d 1234, 1239-40 (10th Cir. 2006).

Mr. Wilken challenges only one aspect of the district court's calculation of the Guideline range for his sentence: its application of the reckless endangerment adjustment at U.S.S.G. § 3C1.2, based on the government's allegation that he drove away from a traffic stop that preceded his arrest at high speed, "with [a] UHP trooper standing half-way in the driver's door" of his vehicle.  He argues that the court erred in approving the PSR's application of the two-level enhancement to his base offense level over his objection, because the government failed to produce evidence of the conduct supporting it.[8]

Mr. Wilken appears to have a valid point.  "At sentencing, the district court may rely on facts stated in the presentence report unless the defendant objected to them.  When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." United States v. Keifer, 198 F.3d 798, 800 (10th Cir. 1999).  Here, Mr. Wilken objected to the PSR's application of the reckless endangerment enhancement, admitting that he drove away during the traffic stop but "den[ying] that one of the

---

[8]U.S.S.G. § 3C1.2 provides for a two-level increase in a defendant's offense level calculation "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

officers was half-way in his vehicle when he drove away or that he engaged in a high-speed chase — and thus den[ying] that his conduct created a substantial risk of serious bodily injury to the officers or anyone else." Mr. Wilken claims he requested videotape evidence from the patrol cars involved in the stop, but the government informed him that "the tapes were apparently lost by the police agency." The record contains no evidence offered by the government to overcome this objection, and Mr. Wilken's admission merely that he fled the traffic stop is not, in and of itself, sufficient to support enhancement under § 3C1.2. United States v. Conley, 131 F.3d 1387, 1390 (10th Cir. 1997) ("Not every flight from a crime scene . . . will constitute reckless endangerment under § 3C1.2."). Thus, it appears that the district court erred by simply adopting the PSR's application of § 3C1.2 over Mr. Wilken's objection. See United States v. Farnsworth, 92 F.3d 1001, 1011 (10th Cir. 1996) ("We repeatedly have held that a district court may not satisfy its obligation [to make a finding as to controverted factual allegations regarding sentencing] by simply adopting the presentence report as its finding.").

However, as it turned out, the § 3C1.2 enhancement had no effect on Mr. Wilken's sentence. Once the court determined, based on facts unrelated to those underlying the reckless endangerment enhancement, that Mr. Wilken qualified as a career offender, its previous offense level calculations became irrelevant; §

4B1.1 categorically prescribes an offense level of 37 and a criminal history category of VI to career offenders convicted of an offense carrying a maximum statutory sentence of life imprisonment.

Mr. Wilken does not argue that the district court substantively erred in its factual findings or legal determination related to his qualification as a career offender under § 4B1.1.  Indeed, he concedes that his criminal history contained the two previous controlled substance felony convictions necessary to trigger § 4B1.1, and therefore that the career offender enhancement "was properly applied in a technical sense" by the district court.  Thus, because § 4B1.1 controlled the Guidelines range for his sentence, any error in the district court's application of § 3C1.2 was harmless.  See United States v. Montgomery, 439 F.3d 1260, 1263 (10th Cir. 2006) ("Harmless error is that which did not affect the district court's selection of the sentence imposed." (quotation omitted)); United States v. Sherwin, 271 F.3d 1231, 1235-36 (10th Cir. 2001) (holding that it was unnecessary for this court to address the district court's erroneous application of a § 3C1.2 enhancement because on remand, the sentence imposed would not change).[9]

_____

[9]Mr. Wilken argues that, even if the error had no effect on his sentence, it is not harmless because it will affect the security designation assigned to him by the Bureau of Prisons.  Precedent is clear, however, that we determine whether a sentencing error is harmless with reference only to the sentence imposed. Williams v. United States, 503 U.S. 193, 202-03 (1992) ("[R]emand is required
(continued...)

We therefore decline to vacate or remand Mr. Wilken's sentence based on error in the calculation of the appropriate Guidelines range.

## 2. Reasonableness of the sentence

Having found no reversible error in the district court's calculation of the Guidelines range, we review the resulting sentence for "reasonableness." Kristl, 437 F.3d at 1053. A sentence imposed within the properly calculated Guidelines range is accorded a rebuttable presumption of reasonableness, which is "a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." Id. at 1054; see Rita v. United States, 127 S. Ct. 2456, 2462 (2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"). Mr. Wilken argues that the district court's imposition

---

[9](...continued)
only if the sentence was imposed *as a result* of an incorrect application of the Guidelines." (quotation omitted, emphasis added)); Montgomery, 439 F.3d at 1263 ("Harmless error is that which did not affect the district court's selection of the sentence imposed." (quotation omitted)); United States v. Marshall, 432 F.3d 1157, 1162 (10th Cir. 2005) ("If the sentencing error does not affect the sentence that would have been imposed by the district court, it does not affect substantial rights."); see also United States v. Brown, 221 F.3d 1336, 2000 WL 876382 at *14 (6th Cir. 2000) (unpublished) (holding that errors in a PSR's Guideline calculations that do not affect the defendant's sentence are harmless even if they affect the defendant's Bureau of Prisons classification).

of a 235-month sentence based, in part, on application of the career offender enhancement, U.S.S.G. § 4B1.1, was unreasonable.

a.      Presumption of reasonableness

As an initial matter regarding our standard of review, we are faced with the vexatious question of whether the presumption of reasonableness accorded to a within-Guidelines sentence applies in this case.  The Guidelines range as calculated in the PSR, based on Mr. Wilken's status as a career offender, was 262 to 327 months' imprisonment.  However, at sentencing, the court agreed with Mr. Wilken that his criminal history score "overstates [his] criminal history slightly" and therefore, rather than applying criminal history category VI as prescribed by § 4B1.1, applied category V.  Based on this change, the court recalculated Mr. Wilken's sentencing range to be 235 to 293 months and imposed a sentence at the bottom of this revised range.

The court, however, did not state the basis for its divergence from the criminal history category set out in § 4B1.1.  The court might have intended to depart from the Guidelines range based on U.S.S.G. § 4A1.3(b), which provides for a downward departure of one criminal history category "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . . . ."  Alternatively, the court might have meant to grant a variance based on the

- 20 -

sentencing factors at 18 U.S.C. § 3553(a), which require the sentencing court to consider "the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." Accordingly, we are unable to determine whether the court's divergence from the sentences prescribed by § 4B1.1 represents a "departure" or a "variance" from the Guideline range. See United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) ("[W]hen a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a 'departure.' When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a 'variance.'").

This distinction is important because it is potentially determinative of our standard of review. As previously stated, we apply a rebuttable presumption of reasonableness when reviewing a sentence that "falls within the properly calculated Guidelines range." Kristl, 437 F.3d at 1053. It is well settled that when a district court *varies* from the Guidelines range based only on non-Guideline § 3553(a) factors, the resulting sentence lies outside of the "properly calculated Guidelines range" and therefore is not presumed to be reasonable. See, e.g., United States v. Valtierra-Rojas, 468 F.3d 1235, 1238-39 (10th Cir. 2006)

(holding that a sentence based on a variance from the Guidelines range, invoking the § 3553(a) factors, is not entitled to a presumption of reasonableness, though it is not presumptively unreasonable), cert. denied, 127 S. Ct. 2935 (2007).

However, it is less clear whether a sentence based on a *departure* that is itself recognized under the Guidelines is considered a within-Guidelines sentence for purpose of applying a presumption of reasonableness on review.  Fortunately, this determination is not necessary to our resolution of this case, for the result is the same either way; even without the benefit of a presumption of reasonableness, we nevertheless conclude that Mr. Wilken's sentence is reasonable.  We therefore reserve for another day the question of whether a presumption of reasonableness applies to a sentence that departs, in either direction, from the applicable Guideline range under § 4B1.1.

        b.      Unreasonableness based on the efficacy of § 4B1.1

In attempting to show that his sentence was unreasonable, Mr. Wilken argues that the United States Sentencing Commission, the body responsible for creating the Sentencing Guidelines, "has acknowledged that the career offender provision, as it applies to drug trafficking offenses, does not effectively serve the sentencing goals" of § 3553(a).  The Sentencing Commission, in a 2004 report, noted that offenders who qualified for § 4B1.1's career offender enhancement based only upon prior drug offenses displayed lower recidivism rates than those

career offenders who were so classified based on prior crimes of violence, and concluded that the use of prior drug offenses to qualify offenders under § 4B1.1 had "unwarranted adverse impacts on minority groups without clearly advancing a purpose of sentencing." U. S. Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform at 134 (2004), available at http://www.ussc.gov/15_year/15_year_study_full.pdf [hereinafter "Sentencing Commission Report"].

Be that as it may, the fact remains that Congress has not yet been persuaded to remove prior drug offenses as qualifiers for the career offender provision, and "a sentence is not rendered unreasonable merely because of a district court's refusal to deviate from the advisory guideline range" based on disagreements with the policies underlying a particular Guideline provision. United States v. McCullough, 457 F.3d 1150, 1171 (10th Cir. 2006), cert. denied, 127 S. Ct. 988 (2007). Indeed, in McCullough we considered and rejected a very similar argument regarding the disparity in the Guidelines between crack cocaine and powder cocaine — a disparity, we note, of which the Sentencing Commission expressed similar disapproval in the same report cited by Mr. Wilken. See Sentencing Commission Report at 131-32 (noting that "the Commission has repeatedly recommended that the quantity thresholds for crack cocaine be revised

upward," and that this change "would dramatically improve the fairness of the federal sentencing system"). In McCullough, we thus held that a district court does not err by refusing to depart or vary downward based on the Guidelines' disparate treatment of crack and powder cocaine. 457 F.3d at 1171.

The same reasoning applies to Mr. Wilken's disagreement with the policy underlying § 4B1.1 in this case. While there may exist cogent arguments against the inclusion of prior drug offenses under § 4B1.1, a district court does not err by declining to depart or vary from a within-Guidelines sentence on this ground. See United States v. Pruitt, 487 F.3d 1298, 1316-17 (10th Cir. 2007) (McConnell, J. concurring) (discussing the perceived inequities of § 4B1.1 as applied based only on prior drug offenses, but recognizing that application of § 4B1.1 in such a context is "reasonable" under Tenth Circuit precedent). We therefore cannot hold his sentence unreasonable based on such a broad policy disagreement.

    c.  Unreasonableness based on Mr. Wilken's criminal history

Mr. Wilken also argues, based more specifically on the facts of his case, that his criminal history does not warrant the sentence enhancement resulting from his being labeled a career offender under § 4B1.1. He notes that he proceeded pro se in pleading guilty to a misdemeanor charge of possession of marijuana and argues that this prior conviction should therefore not have contributed to his criminal history score. He also contends that, although the PSR

listed three felony convictions for drug offenses in his criminal history, two of these convictions occurred in "related cases" and should therefore be treated as a single sentence; thus, he "only had two previous offenses that qualified him for application of" § 4B1.1.

It is not clear that Mr. Wilken's characterization of his prior convictions as "related" is accurate, as the record does not demonstrate that any of the prior convictions listed in the PSR occurred on the same occasion, were part of a single common scheme or plan, or were consolidated for trial or sentencing. See U.S.S.G. § 4B1.2(c) (defining the "two prior felony convictions" required for career offender status to require that the convictions be counted separately under § 4A1.1's criminal history provisions); U.S.S.G. § 4A1.2, cmt. 3 (defining "related cases," which are not counted separately for purposes of criminal history, as those resulting "from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing").

In any case, even if we were to adopt Mr. Wilken's version of his criminal history, the two prior felony convictions for drug offenses that he accepts are still sufficient to support the district court's application of the career offender enhancement. See U.S.S.G. § 4B1.1(a) (requiring a career offender to have, inter alia, "at least two prior felony convictions of either a crime of violence or a

controlled substance offense").  As Mr Wilken concedes that this represents the "minimum number of offenses triggering the provision," we fail to see how his characterization of his criminal history in any way indicates that application of § 4B1.1 would be unreasonable.

Further undercutting Mr. Wilken's argument is the fact that the district court, at the sentencing hearing, "recognize[d] that the [PSR's] criminal history overstates [Mr. Wilken's] criminal history slightly," and therefore granted a downward adjustment from § 4B1.1's provision of criminal history category VI, opting instead to keep Mr. Wilken in category V.  Mr. Wilken thus received a sentence that took into account the relative lack of severity of his criminal history.[10]

We therefore hold that Mr. Wilken's sentence is not unreasonable based on his criminal history and his qualification as a career offender under § 4B1.1.

    d.    The district court's explanation of the sentence

Finally, Mr. Wilken briefly brings what we construe as a procedural challenge to the reasonableness of his sentence, arguing that the district court's

---

[10]We disagree with Mr. Wilken's contention that the court's decision to reduce his criminal history score did not take into account his argument that certain of his prior offenses were related.  The court's explanation indicated that it based the adjustment on over-representation of Mr. Wilken's criminal history generally, not on any particular conviction therein.  We therefore understand the court to have heard Mr. Wilken's arguments regarding his criminal history and addressed them with the downward adjustment from category VI to category V.

stated reason for applying § 4B1.1's career offender provision and imposing a 235-month sentence was not supported by the record. Because Mr. Wilken did not object on this ground at the sentencing hearing, we review this claim only for plain error. See United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir. 2006), cert. denied, 127 S. Ct. 3043 (2007). "Plain error occurs where there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1222 (quotation omitted).

At the end of the sentencing hearing, after pronouncing sentence, the court stated:

> Under these circumstances I find that you qualify as a career offender, not to mention you have endangered the lives of your children for years now. I don't see anything that has given you enough incentive to stop a very, very dangerous practice.

Mr. Wilken focuses on the statement that he "endangered the lives of [his] children," alleging that this statement is unsupported by the record. To the contrary, we find ample support in the record for this statement. The PSR describes a charge pending against Mr. Wilken at the time of his trial indicating that his two sons, aged 6 and 8, were found during a raid of his home along with methamphetamine, drug paraphernalia, and chemicals used to manufacture methamphetamine. At the sentencing hearing, Mr. Wilken's attorney conceded that due to his client's use of methamphetamine, "his judgment was totally

- 27 -

wrecked and his children's lives [were] wrecked." Indeed, during his own statements at the sentencing hearing, Mr. Wilken indicated that he was aware of the effects of his drug abuse on his children: "I have never had any intention of hurting anybody or endangering my kids' lives. I guess I just didn't realize the power the drugs had over me. . . . There is [sic] a lot of things I would do over if I could."

We also do not read the court's statement as providing endangerment of his children as the sole reason for the sentence imposed. The court stated, "I don't see anything that has given you enough incentive to stop a very, very dangerous practice," emphasizing the recurring nature of Mr. Wilken's drug abuse and troubles with the law and noting that none of his previous sentences had apparently been sufficient to deter his behavior. This reasoning is well supported by Mr. Wilken's criminal history and is itself sufficient to explain the imposition of career offender status. See, e.g., Pruitt, 487 F.3d at 1310 ("When a defendant faces a sentence for her fourth drug-related conviction, it is reasonable to infer that she is not easily deterred from engaging in unlawful conduct.").

We therefore do not find the district court's statement of its reasons for imposing a 235-month sentence to constitute error, let alone plain error.

III. CONCLUSION

For the foregoing reasons, we cannot conclude that Mr. Wilken's waiver of his appellate rights was knowing and voluntary and we therefore decline to enforce that waiver.  On the merits of his appeal, we agree that the district court initially miscalculated Mr. Wilken's criminal history by applying an enhancement for reckless endangerment pursuant to § 3C1.2 over his objection, without evidence of conduct sufficient to support this enhancement; however, we conclude that this error was harmless in light of the court's concededly proper application of the career offender provision at § 4B1.1, which ameliorated the effects of the previous error.  Finally, we hold that a 235-month sentence was reasonable given Mr. Wilken's criminal history.

Accordingly, Mr. Wilken's sentence is AFFIRMED.