**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

ELEUTERIO GUTIERREZ,

　　　　Defendant - Appellant.

No. 07-4241

(D. Utah)

(D.C. No. 06-CR-119-PGC)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Eleuterio Gutierrez, pled guilty to one count of selling of citizenship papers, in violation of 18 U.S.C. § 1427, and two counts of aggravated identity theft, in violation of 18 U.S.C.§ 1028A. He was sentenced to

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

a term of thirty-six months and a day.  Gutierrez appeals his sentence, which we affirm.

## BACKGROUND

The following facts are as stated in the United States Probation Office Presentence Report ("PSR"), prepared in connection with the imposition of a sentence in this case, as well as Gutierrez's statement made in advance of his guilty plea.  On November 7, 2006, a confidential informant ("CI") contacted Gutierrez's co-defendant, Veronica Carrillo, and arranged to purchase two United States birth certificates.  The meeting, at Carrillo's Logan, Utah, residence, was surreptitiously recorded.  At some point in the meeting, Carrillo stated that she had sold over 300 United States birth certificates.  Carrillo told the CI that she "would call the CI in a week or so when she received the birth certificates and social security cards from her source in Texas."  Statement by Def. in Advance of Plea at 5, R. Vol. Supp. IV.

Approximately one week later, on November 14, 2006, United States Postal Inspectors in Salt Lake City intercepted a U.S.P.S. Express Mail envelope from El Paso, Texas, addressed to Carrillo at her house in Logan.  Law enforcement authorities obtained a search warrant, opened the envelope and discovered another envelope inside.  This envelope was addressed to Carrillo, with a return address for Gutierrez in El Paso, Texas.  The envelope contained two Illinois birth

certificates and two social security cards. The authorities resealed the documents back in the envelope and returned the envelope to circulation for delivery to Logan, Utah.

The following day, the CI contacted law enforcement agents and stated that Carrillo had just contacted the CI to let the CI know that Carrillo had received a male birth certificate and it was available for pick up. Agents thereafter observed the CI meet with Carrillo at Carrillo's residence. The CI received a male Illinois birth certificate and a social security card. The CI then provided Carrillo with $300 in order to obtain an additional birth certificate.

On November 22, 2006, a similar series of transactions occurred, and Carrillo received another birth certificate (this one female) and accompanying social security card in an envelope from Texas with a return address of Gutierrez. Carrillo contacted the CI and stated that she had received the female birth certificate. On November 24, the CI went to Carrillo's house and, after paying an additional $300, was given the birth certificate and social security card. A similar series of transactions occurred on November 28, with authorities intercepting a third express mail envelope from Gutierrez in El Paso and addressed to Carrillo, inside of which were two birth certificates and two social security cards.

Carrillo was arrested on December 12, 2006. Law enforcement authorities found a ledger at her house, which detailed twenty-three transactions in which individuals purchased or ordered identity documents from Carrillo. The ledger

included information about prices, contact information, whether the requested identity documents were for a man or a woman, and any age parameters. Additionally, agents "found in Ms. Carrillo's house records of money transfers from Ms. Carrillo to Gutierrez, which correspond to orders for documents placed with Ms. Carrillo." United States Probation Office Presentence Report ("PSR") at ¶ 12, R. Vol. III.

On December 22, 2006, Gutierrez was arrested when he entered the United States in El Paso, Texas. Gutierrez apparently admitted selling documents to Carrillo.

As indicated, Gutierrez pled guilty and a PSR was prepared in connection with sentencing. The PSR calculated that, pursuant to United States Sentencing Commission, Guidelines Manual ("USSG") § 2L2.1, Gutierrez's base offense level was eleven. He received a four-level increase because he had two prior convictions for felony immigration and naturalization offenses. He received a further, three-level increase pursuant to USSG § 2L2.1(b)(2)(A) because the offense involved between six and twenty-four documents. After a reduction for acceptance of responsibility, Gutierrez's total adjusted offense level was fifteen. With a criminal history category of II, Gutierrez's advisory sentencing Guidelines range was twenty-one to twenty-seven months. However, because Gutierrez also pled guilty to two counts of aggravated identify theft, he was faced, pursuant to

18 U.S.C. § 1028A, with a mandatory two-year sentence to be served consecutively to his advisory Guidelines sentence.

Prior to sentencing, Gutierrez filed a written objection to the three-level upward adjustment for six or more documents under USSG § 2L2.1(b)(2)(A). The government responded, explaining why it believed the adjustment applied:

> Here, the PSR describes conduct by the defendant which demonstrate that he trafficked at least 6 documents. First, in a conversation recorded by law enforcement, Carrillo had earlier bragged to the CI that she had sold more than 300 birth certificates to others in the past. While this statement was possible embellishment on Carrillo's part, it is undisputed that Carrillo sold more than the intercepted documents. When agents searched Carrillo's home following her arrest, agents discovered a ledger containing details of 23 transactions relating to the sale of documents as well as money transfer receipts from Carrillo to Gutierrez for the orders placed by her. There is no evidence that Carrillo had any other source for the documents she sold and, in fact, she told agents that Gutierrez was her only source. It is therefore reasonable to conclude that he was the source for the documents listed on the ledger particularly when Gutierrez' criminal history is considered, including two prior convictions relating to the fraudulent use of immigration-related documents. Collectively, this uncharged conduct establishes a sufficient basis for the Court to concluded that the defendant has participated in the trafficking of at least 6 documents to Carrillo.

Resp. to Sent. Mem. at 5-6, R. Vol. I.

The court found that the government had met its burden of establishing that Gutierrez's conduct involved six or more documents. The court ultimately reduced Gutierrez's total offense level to twelve, instead of fifteen, because of Gutierrez's intellectual impairments, and imposed a sentence of twelve months and one day for the document sale conviction and a consecutive term of twenty-

four months for the aggravated identity theft. Thus, the final sentence was for thirty-six months and a day.

Gutierrez appeals, arguing only that there was insufficient proof that the offense involved six or more documents.

**DISCUSSION**

"In reviewing a criminal sentence, we first determine whether the district court correctly applied the Guidelines to arrive at the applicable sentencing range." United States v. Chavez-Calderon, 494 F.3d 1266, 1268 (10th Cir. 2007). "In so doing, 'we review factual findings for clear error and legal determinations de novo.'" Id. (quoting United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam)). "When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." United States v. Wilken, 498 F.3d 1160, 1169 (10th Cir. 2007) (further quotation omitted). Accordingly, the government had to prove by a preponderance of the evidence that Gutierrez's offense involved at least six documents.

The district court found the government had met its burden of proof, relying on the ledger, Carrillo's statements about the number of documents she had obtained and Gutierrez being her only source, and because it "really wouldn't make any sense to think that somebody would have two different sources of

documents for an operation like this you just need one source and that source was the defendant." Tr. of Sent. Hr'g at 9, R. Vol. II. We agree with the district court. As the government aptly summarized it, the record reveals the following:

> Government investigators, over the course of two weeks, intercepted three Express Mail envelopes containing five birth certificates, which envelopes were mailed from Gutierrez in Texas to Carrillo in Utah. Gutierrez admitted in his plea agreement that he sold the five birth certificates . . . to Carrillo. Carrillo told a confidential informant, during a surreptitiously recorded meeting, that she had sold over 300 birth certificates. During that same meeting, Carrillo told the confidential informant, who had placed an order for a birth certificate, that the document would come from Carrillo's source in Texas in a week or so. Approximately one week later, an Express Mail envelope containing the requested birth certificate was mailed from Gutierrez's El Paso, Texas, address and was received by Carrillo in Utah. In addition, Carrillo told a government agent that Gutierrez was her supplier. Furthermore, documents showing money transfers from Carrillo to Gutierrez, and a ledger detailing 23 separate transactions, were found in Carrillo's residence. In light of this evidence, the record fully supports the district court's conclusion that Gutierrez's offense involved at least six documents.

Appellee's Br. at 12-13. That is sufficient to establish the existence of six or more documents.

## CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-7-