**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

BRANDON LAMAR SALLIS, a/k/a
Mr. T,

      Defendant–Appellant.

No. 06-7112
(D.C. No. CR-06-07-RAW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE** and **LUCERO**, Circuit Judges, and **BRIMMER**,[**] District
Judge.

---

Brandon Lamar Sallis ("Brandon") was convicted by a jury of drug and

firearm possession and sentenced to 30 years' imprisonment. He now appeals his

sentence on three grounds, maintaining that: (1) the district court incorrectly

applied a four-level enhancement for being the leader or organizer of a criminal

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Clarence A. Brimmer, United States District Judge for the
District of Wyoming, sitting by designation.

activity involving five or more people under U.S.S.G. § 3B1.1(a), (2) the district court erred in applying a career offender enhancement based on prior statutory rape convictions because statutory rape is not a crime of violence under § 4B1.1(a), and (3) the district court imposed a sentence greater than the statutory maximum on Count 2 of his conviction.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm the district court's application of the leader enhancement. Because Brandon's recommended United States Sentencing Guidelines ("Guidelines") sentencing range would be the same regardless of whether the district court applied the career offender enhancement, and because he was sentenced at the low end of the range, we do not decide whether that enhancement was properly applied. We set aside the sentence on Count 2 because it is in excess of the applicable statutory maximum and remand for resentencing.

# I

Brandon, along with his identical twin brother, Randon Sallis ("Randon"), was indicted as a coconspirator in a drug trafficking scheme.[1] According to the government, Brandon and Randon[2] led a large-scale drug distribution network in Muskogee, Oklahoma. Brandon was charged on six criminal counts of a

---

[1] DeMarcus Johnson was also named as a coconspirator.

[2] Randon appealed his sentence to this court in United States v. Sallis, No. 06-7111, ___ F.3d ___ (10th Cir. June __, 2008).

multicount superceding indictment: conspiracy to distribute methamphetamine, cocaine, and marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count 1); possession of more than 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (Count 2); possession of marijuana with intent to distribute in violation of § 841(a)(1) and (b)(1)(D) (Count 3); possession of cocaine with intent to distribute in violation of § 841(a)(1) and (b)(1)(C) (Count 4); felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 5); and possession of a firearm in furtherance of a drug trafficking crime in violation of §§ 924(c)(1)(A)(i) and 2 (Count 6).[3]

At the Sallises' jury trial, the government offered testimony from various witnesses and coconspirators. David Mitchell testified that he had known Brandon and Randon since they were teenagers. He stated that he first purchased drugs from Brandon and continued to buy ecstasy, cocaine, methamphetamine, and marijuana from both Brandon and Randon. Brandon would "front" drugs to him, meaning that he repaid Brandon after he had sold the drugs to others.

According to Mitchell, Brandon and Randon traveled to California every three months to purchase drugs. On one occasion, Mitchell observed Brandon and Randon with between $50,000 and $100,000 in cash stashed in the back seat of a

_____

[3] He was also charged with three counts of criminal forfeiture under 21 U.S.C. § 853.

-3-

car. Randon told Mitchell that they were driving to California to purchase drugs and later offered Mitchell $2500 to make such a trip to California, but he declined. The government also introduced airline records showing that Randon took seven one-way trips from Oklahoma to California. Brandon reserved but a single one-way ticket from Oklahoma to California; however, he did not take the flight.

Andre McJunkins, a distant cousin of Brandon and Randon, reported a conversation he had with Randon about one of the California trips. Randon told McJunkins that he and Brandon had been "busted" in California, that Randon had lost $30,000 as a result, and that Brandon lost $50,000. McJunkins testified that he gave Brandon a gun in exchange for "ice," or methamphetamine. He went on to describe coconspirator DeMarcus Johnson as the Sallises' "flunky." According to McJunkins, Johnson "didn't have as much power as [Randon and Brandon] did."

Jerry Clemons, who is the Sallises' brother-in-law, confirmed that the brothers frequently traveled to California to purchase drugs. Before leaving on these trips, the brothers would pool their money together and upon returning would divide the drugs up into smaller portions for sale. According to Clemons, the drugs were jointly owned by Randon and Brandon. Clemons testified that the brothers fronted drugs to Mitchell, Johnson, and two other individuals. Johnson and Clemons sold crack cocaine, which they made from cocaine powder provided

to them by Randon and Brandon.  In addition, the brothers paid Clemons to act as their bodyguard.

John Cone explained that he had engaged in several drug transactions with Randon between February and November 2004, selling a total of 15 to 20 kilograms of cocaine to him.  Cone did not, however, have any contact with Brandon and never sold drugs to him.

James Baccus described running into Brandon and Mitchell at a bingo hall.  Brandon asked Baccus if he was interested in selling drugs and offered to provide him with high-quality methamphetamine.  Baccus later accepted Brandon's offer and was fronted an eighth of an ounce of methamphetamine.  He made $250 selling it, $200 of which he returned to Brandon.  Baccus called Brandon the next day to arrange another deal, and Brandon said he would send Mitchell over with a quarter ounce of methamphetamine.  When Mitchell delivered less than a quarter ounce, Baccus called Brandon to complain, and thereafter Brandon delivered the drugs to Baccus directly.  Baccus recited the details of several other deals, and each time Baccus was given a larger quantity of drugs to sell.

Karah Lehman, Brandon's former girlfriend, testified that she purchased drugs from Brandon and that he kept a set of scales at her house which he used to measure cocaine.  Lehman also stated that Randon fronted her drugs on two occasions.  She claimed that both brothers made money by selling drugs.  Lehman's friend, Jennifer Stretch, testified that she bought small amounts of

cocaine from Randon several times but only bought cocaine from Brandon once. She reported that she had never seen Brandon with a large quantity of money or drugs.

In addition to testimony regarding drug transactions, the government introduced evidence regarding the finances of the alleged drug conspiracy. Specifically, the government called a financial analyst, who testified that between 2003 and 2005, Randon deposited $141,000 into a bank account. The government did not, however, show that Brandon had a bank account or that he had access to his brother's account.

On April 21, 2006, Brandon was convicted on all six counts. As to Count 2, the jury found that he possessed less than 50 grams of methamphetamine.

Brandon's presentence report ("PSR") calculated a base offense level of 36. See U.S.S.G. § 2D1.1(a)(3) & (c)(2). It recommended a four-level enhancement for Brandon's role as a leader or organizer of a criminal activity involving five or more participants, see § 3B1.1(a), and a two-level enhancement for obstruction of justice, see § 3C1.1. The resulting adjusted offense level was 42. Based on Brandon's prior criminal conduct, his criminal history category was III. Brandon's resulting recommended Guidelines range was 360 months to life in prison.

In addition, the PSR recommended a career offender enhancement pursuant to § 4B1.1. This enhancement was based on Brandon's two prior felony

convictions for second degree rape, which the PSR treated as crimes of violence for purposes of § 4B1.1.  In Oklahoma, second-degree rape is defined as sex with a person under the age of 16.  Okla Stat. Ann. tit. 18, §§ 1111 & 1114(B).  With this enhancement, Brandon's criminal history category was VI.  See § 4B1.1(b).  An offense level of 42 and a criminal history of VI also results in a recommended sentence of 360 months to life.  Under the enhancement, however, the mandatory minimum sentence for Brandon's conviction under 18 U.S.C. § 924(c) was added to the range, resulting in a recommended sentence of 420 months to life.  See U.S.S.G. § 4B1.1(c)(2) (if a defendant is convicted on multiple counts, one of which is in violation of 18 U.S.C. § 924(c), then the mandatory minimum penalty under that section is added to the applicable Guideline range); 18 U.S.C. § 924(c)(i) (imposing a mandatory minimum sentence of 5 years, or 60 months).

At his sentencing hearing, Brandon objected to both the leader enhancement and the career offender enhancement.  The district court rejected his arguments and applied the enhancements.

In concluding that the leader enhancement was appropriate, the district court found that Brandon and Randon "appeared to be equal partners in the drug conspiracy."  Specifically, it noted that the two pooled their money, traveled together to obtain drugs for distribution, sold and fronted drugs to others, and collected proceeds from their coconspirators.  It also relied on trial testimony showing that Mitchell, Lehman, and Baccus were fronted drugs, that Clemens

-7-

"was a muscle man," and that Johnson was considered by others to be the Sallises' "flunky." Based on this evidence, the court found that Brandon was a leader or organizer of a drug conspiracy involving more than five participants.

As for the career offender enhancement, the court relied on Tenth Circuit precedent holding that sexual offenses involving minors present a serious potential risk of physical injury and were thus crimes of violence. It concluded that Brandon's prior convictions for rape of a minor fell within this category of sexual offenses and applied the enhancement.

Ultimately, the district court chose to vary downward. Although the court applied the career offender enhancement, which carried with it a 60-month increase to Brandon's sentencing range, the court concluded, in light of the sentencing factors in 18 U.S.C. § 3553, that "a reasonable sentence guideline range before the [60-month increase] would be 360 months to life." It imposed a sentence of 360 months' imprisonment on Count 1, with lesser sentences on Counts 3 through 6.[4] Despite a statutory maximum sentence of 240 months on Count 2, see 21 U.S.C. § 841(b)(1)(C), the district court sentenced Brandon to 360 months' imprisonment on that count. At the time, Brandon did not object to his sentence on Count 2. He now appeals his sentence on all counts.

---

[4] Brandon was sentenced to 360 months on Counts 1 and 2; 60 months on Count 3; 240 months on Count 4; 120 months on Count 5; and 60 months on Count 6. Counts 1 through 5 were to be served concurrently, and Count 6 served consecutively to the other counts.

-8-

**II**

Brandon alleges that the sentencing court committed error in three areas: (1) application of the enhancement for criminal leaders, (2) application of the career offender enhancement, and (3) imposition of a sentence in excess of the statutory maximum on Count 2. Our appellate review of a defendant's sentence "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." United States v. Smart, 518 F.3d 800, 803 (10th Cir. 2008). Brandon challenges only the procedural reasonableness of his sentence, which requires proper calculation of his Guidelines range. Gall v. United States, 128 S. Ct. 586, 597 (2007). We review a sentencing court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001). "Even where we find an error in calculating the Guidelines range, however, we need not vacate and remand the sentence if the error was harmless." United States v. Wilken, 498 F.3d 1160, 1169 (10th Cir. 2007).

**A**

Brandon first contends that he was not a leader or organizer of the alleged drug conspiracy. Although he admits that the evidence supports a finding that he sold and fronted drugs to others, he argues that this activity is insufficient to

warrant the leader enhancement. In addition, he urges that the evidence indicates that his twin brother Randon was the leader of the organization.

Section 3B1.1(a) of the Guidelines provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). As the application notes for this guideline explain, courts should consider factors including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

§ 3B1.1 cmt. n.4.

This court has elaborated that "[i]n considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995) (quotations and citations omitted). We have also identified several factors which might indicate that a defendant exercised the requisite control over others, including that: other sellers worked for him, were recruited

-10-

by him, or had their activities controlled by him; "he paid others for their efforts on behalf of the conspiracy;" "he restricted the people to whom other coconspirators could sell their drugs;" and "he controlled the manner of sales, set prices, or claimed the right to a larger share of proceeds." United States v. Anderson, 189 F.3d 1201, 1212 (10th Cir. 1999); see also United States v. Massey, 48 F.3d 1560, 1572 (10th Cir. 1995) (listing similar factors).

By contrast, a defendant's participation in illegal but lower level activities will not support application of the enhancement. In Anderson, we stated that evidence that the defendant received profits and was involved in the production of drugs was insufficient to warrant the enhancement. 189 F.3d at 1212. In addition, a "role as a supplier of drugs to others, standing alone, is not enough" to justify the organizer enhancement. Id. Similarly, supplying drugs on credit, or fronting, without more, is not a basis for the enhancement. United States v. Owens, 70 F.3d 1118, 1129 (10th Cir. 1995). The evidence in this case, however, demonstrates that Brandon did more than merely supply drugs to others.

Evidence presented at trial showed that Brandon exercised decision making authority over the drug distribution conspiracy and participated in planning its activities. Testimony from Mitchell and Clemons indicates that Brandon and Randon jointly determined when they would travel to California to obtain drugs and how they would divide it up for distribution afterwards. Brandon also recruited accomplices and controlled the activities of others. Although Randon,

-11-

rather than Brandon, offered Mitchell $2500 to travel with them to California, Brandon independently recruited Baccus to sell methamphetamine. He then directed Mitchell to deliver drugs to Baccus. When Mitchell failed to provide the correct amount of methamphetamine, Brandon handled the distribution personally. Baccus' testimony also indicates that Brandon determined the quantity and price of drugs that Baccus could sell at any given time. Thus, the government has shown that Brandon's conduct corresponds with several of the factors which justify application of the enhancement. See Sallis, No. 06-7111, ___ F.3d ___, slip op. at 12-13 (10th Cir. June __, 2008) (a defendant's conduct need not satisfy all of the relevant factors, so long as taken together his conduct indicates that he "exercised the kind of leadership and control that the enhancement seeks to penalize"). Contrary to Brandon's contentions, there was sufficient evidence for the district court to conclude that he was in fact intimately involved in the organization and leadership of the conspiracy.

Brandon suggests that Randon was the true leader of the organization, as evidenced by the flight and bank records. He also points out that Cone sold drugs only to Randon. But "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." § 3B1.1 cmt. n.4. Randon's activities do not preclude the possibility that Brandon also exhibited "control, organization, and responsibility for the actions of other individuals." Torres, 53 F.3d at 1142. Moreover, the district court did not clearly

err in finding that Brandon and Randon "appeared to be equal partners in the drug conspiracy." Accordingly, this argument fails.

We conclude that Brandon's conduct, as indicated by evidence presented at trial and the sentencing court's findings of facts, justifies the application of the § 3B1.1(a) sentencing enhancement. We thus affirm this aspect of Brandon's Guidelines calculation.

**B**

Brandon argues that the district court improperly enhanced his sentence under the career offender guideline because one of his prior convictions for statutory rape was not a "crime of violence." We find it unnecessary to decide whether Brandon's statutory rape conviction was a crime of violence, because even if the district court erred in applying the enhancement, any such error was harmless. See Wilken, 498 F.3d at 1169 (reviewing application of sentencing enhancement for harmless error).

In determining whether an alleged sentencing error is harmless, we refer "only to the sentence imposed." Id. at 1169 n.9. Remand is not required where resentencing would "produce the same result." United States v. Sherwin, 271 F.3d 1231, 1235 (10th Cir. 2001). As discussed, the district court did not err in applying the leader enhancement, and thus on remand Brandon would again face a sentencing range based on this enhancement. With the leader enhancement, but absent the career offender enhancement, Brandon's recommended range would be

360 months to life.  Because the sentence imposed, 360 months, falls within this otherwise applicable range, we conclude that any error in applying the career offender enhancement was harmless.[5]  See Wilken, 498 F.3d at 1170 (holding that because the district court properly applied an enhancement that "controlled the Guidelines range for [the defendant's] sentence," any error in applying an unrelated enhancement was harmless).

## C

Brandon contends that his sentence on Count 2 is improper because it exceeds the statutory maximum for the crime.  We agree.

On Count 2, the jury found that Brandon possessed less than 50 grams of methamphetamine with intent to distribute.  Title 21, section 841(b) of the United States Code provides a statutory maximum sentence of 20 years' imprisonment for possession of less than 50 grams of methamphetamine.  See § 841(b)(1)(C) (setting statutory maximum of 20 years' imprisonment for possession of any quantity of schedule II controlled substance, if not already provided for in § 841(b)(1)(A), (B), or (D)); § 841(b)(1)(A)(viii) (setting penalties for possession of 50 grams or more of methamphetamine); 21 C.F.R. § 1308.12(d) (listing

---

[5] In reaching this conclusion, we note that the district court properly considered the sentencing factors under 18 U.S.C. § 3553.  Based on these factors, the court concluded that a sentence of 360 months was sufficient, but not greater than necessary, to achieve the goals of sentencing.  In addition, it found that a sentencing range of 360 months to life was "reasonable."  Given these findings, we see no reason why resentencing would not "produce the same result." Sherwin, 271 F.3d at 1235.

-14-

methamphetamine as schedule II drug). Despite this statutory maximum, the district court sentenced Brandon to 30 years' imprisonment on Count 2.

Because Brandon failed to raise a contemporaneous objection to this aspect of his sentence, our review is for plain error. United States v. Johnson, 4 F.3d 904, 918 (10th Cir. 1993). Plain error occurs when a court imposes a sentence in excess of the statutory maximum. Id. Consequently, we remand for resentencing on Count 2.

### III

We **REMAND** with instructions to vacate the sentence on Count 2 and resentence Brandon within the sentencing range provided by statute. The remainder of the sentence is **AFFIRMED**. Brandon's motions to file a supplemental brief and amend his supplemental brief are **GRANTED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge