NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-1579
——————————

UNITED STATES

v.

MICHAEL JAY JACKSON,
                                                Appellant

——————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-17-cr-0036-001)
District Judge: Honorable Sylvia H. Rambo

——————————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 30, 2020

——————————

Before: GREENAWAY, JR., PORTER, and MATEY, *Circuit Judges*.

(Opinion Filed: May 13, 2020)

——————————

OPINION*

——————————

GREENAWAY, JR., *Circuit Judge*.

—————————————————

        * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Appellant Michael Jackson pleaded guilty to 30 counts of criminal conduct, including wire fraud in violation of 18 U.S.C. § 1343, making false statements in relation to bankruptcy proceedings in violation of 18 U.S.C. § 152(3), bankruptcy fraud in violation of 18 U.S.C. § 157(1), aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and making unlawful monetary transactions in violation of 18 U.S.C. § 1957. The District Court sentenced him to 145 months' imprisonment and ordered him to pay $1,567,275.25 in restitution.

Jackson argues that his sentencing was procedurally unreasonable in four ways: the District Court failed (1) to calculate the Guidelines range for his crimes, (2) to state how it had applied the § 3553(a) factors in reaching his sentence, (3) to allow the Government to inform the Court that the parties had stipulated to a potential sentence reduction because of Jackson's acceptance of responsibility, and (4) to address or explain its ruling on Jackson's objection to a $74,500 portion of his restitution order. Two of these objections—that the District Court failed to state how it applied the § 3553(a) factors and failed to explain its ruling on Jackson's objection to the restitution amount—command our attention. Accordingly, on the basis of these two objections we will vacate Jackson's judgement of conviction and remand this case back to the District Court.

## I.     Background

In January 2011, a Virginia state court sentenced Jackson for embezzling or misdirecting over $500,000 in funds from a company he ran as CEO. Even before that

prosecution, however, Jackson had already commenced the fraudulent scheme charged in this case. Jackson's conduct constituted two distinct frauds: the bankruptcy fraud and the wire fraud. Jackson continued to perpetrate these frauds both during and after serving his sentence for his state embezzlement offense.

## A. The Bankruptcy Fraud

Between 2009 and 2017, Jackson filed seven separate bankruptcy petitions under Chapter 11 or Chapter 13. Jackson made each of these filings in the Middle District of Pennsylvania, and at least five of these filings were transmitted electronically to a bankruptcy court server in Virginia.

Filing a petition under either of these provisions triggers an automatic 30-day stay of any legal proceedings, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C § 362(a)(3). Jackson filed the first of these on January 7, 2009, one day before his residence in Hershey, Pennsylvania was scheduled to be sold at a Dauphin County, Pennsylvania Sheriff's sale. The property was encumbered by two mortgages, and Jackson had not made a payment since January 2008. The aim, and result, of these petitions was to delay the sale of this residence.

In each of these bankruptcy petitions, Jackson inflated his financial resources and made false representations regarding his employment. After rejecting Jackson's fifth bankruptcy petition, the Bankruptcy Court barred him from filing any new bankruptcy

3

petitions for two years. Less than a week later, in violation of this order, Jackson filed another Chapter 13 petition, this one in his wife's name. He did so without counsel and without his wife's knowledge or consent. This filing, like those before it, resulted in a delay of the Sheriff's sale of Jackson's property. On the morning of the newly scheduled date for the sale, Jackson filed yet another bankruptcy petition under his wife's name, again unbeknownst to her. This filing also successfully postponed the Sheriff's sale of Jackson's residence.

Among the assets that Jackson listed in his bankruptcy petitions were income from a paper company named Intex Building Group, Inc. ("Intex"). Jackson claimed to have earned $192,000 in annual income from Intex, but his bank records showed no deposits from Intex, and he admitted in an October 20, 2016 interview with the FBI and IRS that he had never received any income from Intex.

### B. The Wire Fraud

Intex was a sham. In January 2007, Jackson registered the corporation and listed himself as sole shareholder and CEO.[1] Between January 2008 and January 2017, Jackson solicited and received several loans from multiple individuals. In soliciting these funds from investors, Jackson made fraudulent statements regarding investments Intex had

---

[1] The corporation that Jackson listed in his bankruptcy petitions was "Intex Building Group, Inc." PSR ¶ 20. The corporation that he registered in January 2007 was "INTEX Building Materials Group, Inc." PSR ¶ 22. For purposes of this opinion, we refer to these entities collectively as "Intex."

received from well-established, New York-based firms to finance Intex's acquisition of companies that manufactured a variety of building products. In addition, he fabricated personal and business expenses and created email accounts and assumed false identities to obtain additional funds from investors in several states. Between 2007 and 2017, the victims of Jackson's scheme lost $1.7 million. He used these funds to pay for personal expenses, including mortgage payments, his son's tuition at the University of Pittsburgh, wire transfers to his mistress in Las Vegas, and satisfaction of his restitution obligation for his conviction in Virginia.

### C. Jackson's Guilty Plea and Sentencing Hearing

On November 20, 2017, the District Court accepted Jackson's guilty plea to all counts of a 28-count Indictment. Jackson entered his guilty plea without the benefit of a Plea Agreement. On February 22, 2018, the Government filed a Superseding Information that contained two counts, one for wire fraud and one for money laundering. On March 13, 2018, Jackson pleaded guilty to the Superseding Information. Jackson entered into a Plea Agreement in which the Government, in exchange for his guilty plea, agreed to recommend a two-level reduction (and potentially a three-level reduction at the Government's discretion) for acceptance of responsibility.

The United States Probation Office assembled a pre-sentence investigation report ("PSR") that determined that Jackson's total Offense Level was 31 and that he had a Criminal History Category of II. Based on these findings, the Probation Office calculated

Jackson's Guidelines range to be 121 to 151 months' imprisonment. In addition, the Probation Office determined that Jackson owed $1,742,275.25 in restitution to his victims.

Jackson filed a sentencing memorandum in response to the PSR. He made three arguments relevant to this appeal. First, he argued that he should receive a reduction in his total Offense Level due to acceptance of responsibility. Second, he objected to the PSR's restitution calculation and challenged the inclusion of two amounts—$175,000 and $74,500—that he purportedly owed to two of his victims, Pete and Carol Heath. Third, he argued that the sentencing factors under 18 U.S.C. § 3553(a) weighed in favor of granting a variance to a below-Guidelines sentence of 84 months. Jackson did not object to the calculation of his base Offense Level or criminal history category as indicated in the PSR.

At the March 11, 2019 sentencing hearing the District Court noted Jackson's argument that he should receive credit for acceptance of responsibility and his objection to the restitution amount. The District Court denied the request for a reduction for acceptance of responsibility and granted the request to reduce the restitution amount by $175,000. After the District Court made its rulings, Jackson's counsel did not bring to the District Court's attention his challenge to $74,500 that was also included in the Probation Office's restitution calculation. After hearing the parties' presentations and

victim impact statements, the District Court sentenced Jackson to, *inter alia*, 145 months'

imprisonment and ordered him to pay $1,567,275.25 in restitution.[2]

In imposing this sentence, the District Court stated that it "ha[d] considered the

factors set forth at 18 U.S.C.[] Section 3553(a)," App. 183, and set forth the following

reasons. The District Court adopted the PSR without change and stated that (1) its

sentence was within the Guidelines range, (2) Jackson's financial crimes lasted for over a

decade and inured to his substantial benefit, (3) those crimes had a detrimental impact on

at least 20 individuals, and (4) Jackson continued to engage in fraudulent conduct while

under pre-trial supervision. Jackson, again, made no further objections during the

hearing and instead timely filed this appeal.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

We review for plain error alleged defects in sentencing procedure that the

defendant failed to raise before the District Court. *United States v. Parker*, 462 F.3d 273,

278 (3d Cir. 2006). The burden to establish plain error falls on the defendant, who must

show that (1) the District Court committed "an error; (2) the error is clear or obvious,

rather than subject to reasonable dispute; [and] (3) the error affected the appellant's

---

[2] This represents the original restitution minus the $175,000 reduction that the District Court granted at the sentencing hearing.

substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings." *United States v. Lee*, 612 F.3d 170, 178 n.6 (3d Cir. 2010) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). If the defendant meets that burden, then we may exercise our discretion to award relief only if the defendant is "actually innocent" or the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks and citations omitted). This final requirement "is discretionary. Even if an error satisfies the first three prongs, we may correct the error but need not do so." *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) (citing *Olano*, 507 U.S. at 735).

## III. Discussion

At sentencing, a district court must follow a three-step process: (1) "calculate [the] defendant's Guidelines sentence"; (2) "formally rule on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, [] tak[ing] into account" relevant case law; and (3) "exercise [its] discretion by considering the relevant § 3553(a) factors." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). The District Court must fulfill these *Gunter* "steps separately and sequentially." *United States v. Friedman*, 658 F.3d 342, 361 (3d Cir. 2011) (citing *United States v. Lofink*, 564 F.3d 232, 242 (3d Cir. 2009)). On appeal,

Jackson contends that the District Court failed to fulfill the *Gunter* steps in four ways. We address each argument in turn.

### A. Challenges Under *Gunter* Step One

Jackson argues first that the District Court failed to calculate the Guidelines range for his crimes. Before setting forth reasons for imposing its sentence, however, the District Court clearly stated that it "adopt[ed] the pre-sentence investigation report without change." App. 186. Jackson contends that our precedent requires the District Court to calculate the Guidelines range *explicitly* on the record of the sentencing. Jackson is wrong. Our case law makes clear that a district court can satisfy the first *Gunter* step by, at a minimum, explicitly calculating the Guidelines range itself or stating that it had adopted the PSR's Guidelines calculation. *See, e.g.*, *United States v. Weatherspoon*, 696 F.3d 416, 419 (3d Cir. 2012) (noting that while "the District Court did not explicitly calculate or adopt a particular Guidelines range . . . . , after brief argument, it accepted the recommended sentence of 120 months").

Furthermore, Jackson does not argue that either the Guidelines range calculation in the PSR or the District Court's statement that a sentence of 145 months' imprisonment was within the Guidelines range was incorrect. Accordingly, even if we found that the District Court erred in not explicitly calculating the Guidelines range at the sentencing hearing, any such error was harmless. *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) ("For the error to be harmless, it must be clear that the error did not affect the

9

district court's selection of the sentence imposed."). We therefore find that the District Court did not clearly err in adopting the Guidelines range calculation as set forth in the PSR.

### B. Challenges Under *Gunter* Step Two

Jackson next contends that the District Court committed plain error when it denied his request for an offense level reduction for acceptance of responsibility without first allowing the Government to explain why it had stipulated to a reduction.[3] This argument, too, is easily dispatched. The record clearly belies any assertion that the District Court was unaware of either the Government's stipulation to a two-level reduction for acceptance of responsibility or the Government's position on the appropriateness of such a reduction. Indeed, not only did Jackson raise this issue in his sentencing memorandum, the District Court addressed the issue with Jackson's counsel at the pre-sentencing hearing. Moreover, the first page of the PSR, which the District Court expressly adopted, states that "the parties agreed that Jackson should receive a two-level reduction for acceptance of responsibility[] but noted they understood that such a reduction was at the discretion of the [District] Court." PSR at 1. Accordingly, any suggestion that the record is unclear as to whether the District Court was aware of, and properly considered, the

---

[3] Because Jackson failed to object to the District Court's procedural errors, we apply plain error review. *United States v. Flores-Mejia*, 759 F.3d 253, 258 (3d Cir. 2014) ("[U]nless a relevant objection has been made earlier, a party must object to a procedural error after the sentence is pronounced in order to preserve the error and avoid plain error review."). Jackson concedes this point.

10

Government's recommendation for an offense level reduction is without merit. We therefore find that the District Court did not commit any error—and certainly not plain error—in rejecting Jackson's request for such a reduction.

Jackson also argues that the District Court failed to state how it applied the § 3553(a) factors in reaching his sentence and rejecting his arguments for a below-Guidelines variance. We have explained: "With respect to the applicable § 3553(a) factors, the court need not discuss and make findings as to each of them if the record makes clear it took the factors into account in sentencing and gave them meaningful consideration." *United States v. Jones*, 566 F.3d 353, 366 (3d Cir. 2009) (internal alterations, quotation marks, and citation omitted).

Here, the District Court merely stated that it had "considered" the § 3553(a) factors. But "[a] mere recitation of the factors and a statement that counsel's arguments have been considered is insufficient." *Friedman*, 658 F.3d at 362. Jackson argued that he deserved a downward variance so that he could be released at a young enough age to earn money after his release to repay his victims. The District Court neither responded to that argument nor cited any particular § 3553(a) factor in explaining its sentence.[4] This constitutes an error that is "clear or obvious" and "affect[s] [Jackson]'s substantial rights." *Lee*, 612 F.3d at 178 n.6. The District Court's statement that it had considered

---

[4] Instead, the District Court merely stated that the duration of Jackson's financial schemes and the extensive financial injury to his victims warrants imposing a within-Guidelines sentencing.

the § 3553(a) factors was insufficient to "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Lessner*, 498 F.3d 185, 203 (3d Cir. 2007) (citation omitted).

## C. Challenges Under *Gunter* Step Three

Finally, Jackson contends that the District Court committed procedural error by failing to explain its ruling on Jackson's objection to a $74,500 portion of his restitution order. In granting only Jackson's objection to the $175,000 portion of the restitution calculation, the District Court implicitly rejected Jackson's objection to the $74,500 portion. The transcript of the sentencing hearing, however, offers no other indication that the District Court had even considered Jackson's second objection and the arguments made in support thereof. Thus, we are unable to determine whether the District Court has a sound basis for its ruling on Jackson's objection to the $74,500 portion of his restitution order. The Government concedes "that the District Court's oversight in failing to address Jackson's argument and/or explain the basis for it[s] rejecti[on] [of] his objection was error that potentially affected the amount of the restitution order." Appellee Br. at 34. We agree. The District Court's failure to state explicitly why it had overruled Jackson's objection to the $74,500 portion of his restitution order and to set forth its reasons for doing so was plain error.

12

**IV.    Conclusion**

For the foregoing reasons, we will vacate Jackson's judgment of conviction and remand the case to the District Court for resentencing consistent with the rulings in this decision.